*In The*

# United States Court of Appeals
*For The Fourth Circuit*

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee*,

## v.

## RONALD MILTIER,

*Defendant – Appellant*.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT NORFOLK**

_____

**BRIEF OF APPELLANT**

_____

**James R. Theuer**
**JAMES R. THEUER, PLLC**
**555 East Main Street, Suite 1212**
**Norfolk, Virginia 23510**
**(757) 446-8047**

*Counsel for Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION .............................................................1

STATEMENT OF THE ISSUES............................................................1

STATEMENT OF THE CASE................................................................2

SUMMARY OF THE ARGUMENT .....................................................10

ARGUMENT .........................................................................................12

    I.      THERE WAS INSUFFICIENT EVIDENCE FOR A
           RATIONAL JURY TO FIND MR. MILTIER GUILTY
           BEYOND A REASONABLE DOUBT ON THE COUNTS IN
           THE SUPERSEDING INDICTMENT ............................................12

           A.      Standard of Review.................................................12

           B.      The Evidence Was Insufficient For A Reasonable Jury
                   To Find Mr. Miltier Knowingly Received Or Possessed
                   Child Pornography ...................................................13

           C.      The Evidence Was Insufficient For A Reasonable Jury
                   To Find The Files In Counts One And Five Were
                   Received Using Any Means Or Facility Of Interstate Or
                   Foreign Commerce...................................................18

    II.     THE DISTRICT COURT'S JURY INSTRUCTION FAILED
           TO INSTRUCT THE JURY ON THE INTERSTATE NEXUS
           REQUIRED FOR A CONVICTION UNDER 18 U.S.C. §
           2252A(A)(2) AND CONSTITUTED A FATAL VARIANCE..........20

           A.      Standard of Review.................................................20

B.      18 U.S.C. § 2252A(a)(2) Requires That The Visual Depiction Itself Have Moved In Interstate Commerce ............21

CONCLUSION ..................................................................................27

STATEMENT WITH RESPECT TO ORAL ARGUMENT .................................27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

Page(s)

**CASES**

Glasser v. United States,
   315 U.S. 60 (1942)........................................................................................12

Sullivan v. Louisiana,
   508 U.S. 275 (1993)......................................................................................26

United States v. Allmendinger,
   706 F.3d 330 (4th Cir. 2013) .......................................................................20

United States v. Buffalano,
   727 F.2d 50 (2d Cir. 1984) ..........................................................................20

United States v. Burgos,
   94 F.3d 849 (4th Cir. 1996) ...................................................................12, 17

United States v. Cherry,
   330 F.3d 658 (4th Cir. 2003) .......................................................................20

United States v. Floresca,
   38 F.3d 706 (4th Cir. 1994) ....................................................................25, 26

United States v. Hamblin,
   911 F.2d 551 (11th Cir. 1990) .....................................................................18

United States v. Lighty,
   616 F.3d 321 (4th Cir. 2010) .......................................................................20

United States v. Lopez,
   514 U.S. 549 (1995)......................................................................................23

United States v. Mouzone,
   687 F.3d 207 (4th Cir. 2012) .......................................................................20

United States v. Polowichak,
    783 F.2d 410 (4th Cir. 1986) .........................................................................25

United States v. Rasco,
    123 F.3d 222 (5th Cir. 1997) ..........................................................................26

United States v. Rodia,
    194 F.3d 465 (3d Cir. 1995) ...........................................................................23

United States v. Thomas,
    987 F.2d 697 (11th Cir. 1993) ........................................................................18

United States v. Whitfield,
    695 F.3d 288 (4th Cir. 2012) ..........................................................................20

United States v. Young,
    609 F.3d 348 (4th Cir. 2010) ..........................................................................12

Yates v. Evatt,
    500 U.S. 391 (1991)........................................................................................26

**STATUTES**

18 U.S.C. § 1512(b)(1).........................................................................................25

18 U.S.C. § 1512(b)(3).........................................................................................25

18 U.S.C. § 2252A(a)(2)..............................................................................passim

18 U.S.C. § 2252(a)(4)(B) .............................................................................22, 23

18 U.S.C. § 2252A(a)(5).............................................................................1, 2, 18

18 U.S.C. § 3231 ....................................................................................................1

28 U.S.C. § 1291 ....................................................................................................1

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This appeal is from the conviction and sentencing of Mr. Miltier on seven counts of receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2) and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5). The District Court had jurisdiction to try these charges pursuant to 18 U.S.C. § 3231. On November 7, 2016, Mr. Miltier timely filed a notice of appeal from the Final Judgment, dated October 24, 2016. This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I.  **THE DISTRICT COURT ERRED BY DENYING MOTIONS FOR JUDGMENT OF ACQUITTAL ON ALL COUNTS AS THE EVIDENCE WAS INSUFFICIENT FOR A REASONABLE JURY TO FIND MR. MILTIER KNOWINGLY RECEIVED OR POSSESSED CHILD PORNOGRAPHY.**

II.  **THE DISTRICT COURT ERRED BY DENYING MOTIONS FOR JUDGMENT OF ACQUITTAL ON COUNTS ONE AND FIVE AS THE EVIDENCE WAS INSUFFICIENT FOR A REASONABLE JURY TO FIND THE FILES IN COUNTS ONE AND FIVE WERE RECEIVED USING ANY MEANS OR FACILITY OF INTERSTATE OR FOREIGN COMMERCE**

III.  **THE DISTRICT COURT ERRED IN INSTRUCTING THE JURY ON THE INTERSTATE COMMERCE NEXUS REQUIRED FOR A CONVICTION OF RECEIVING CHILD PORNOGRAPHY, REQUIRING A NEW TRIAL.**

**STATEMENT OF THE CASE**

Mr. Miltier was indicted on November 18, 2015, with seven counts of receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2) and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5). Docket Sheet, Joint Appendix (J.A.) at 4. The Court dismissed the indictment following the filing of a superseding indictment on March 24, 2016. Id. at 5. The superseding indictment charged Mr. Miltier with seven counts of receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2) and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5), but the images upon which the charges were based were different images than those on which the original indictment had been based. Cf. Indictment, docket entry no. 1, with Superseding Indictment, J.A. at 14-19. Each of Counts One through Seven alleged that Mr. Miltier had received the file at issue through the internet. Superseding Indictment, J.A. at 14-19. Mr. Miltier filed proposed jury instructions with the trial court prior to trial. Def. Prop. Jury Inst., J.A. at 20.

At trial, the Government introduced evidence that agents executed a search warrant at Mr. Miltier's residence on May 7, 2014. Moughan Test., Tr. of July 12, 2016, J.A. at 40. When the agents arrived, Mr. Miltier was home alone working on the roof of the house. Id. During the execution of the search warrant, Special Agent Moughan of the FBI interviewed Mr. Miltier and asked him what computers

were in the house.  Id. at 42.  Mr. Miltier told Special Agent Moughan "how many computers he thought were in the house and where they were located."  Id.  Mr. Miltier "initially [] told me of a desktop in his bedroom and a laptop in his bedroom."  Id. at 43.  Mr. Miltier "also mentioned that his granddaughter had a laptop."  Id.  During the search, the agents found two laptops, in plain view, with the desktop in the bedroom.  Id. at 45.  Mr. Miltier told Special Agent Moughan the second laptop in the bedroom, an Acer laptop, "was a laptop that his family used and he used [] when he was in Japan for work."  Id. at 43.  Mr. Miltier was in Japan for work in February through May, 2013.  Id. at 50.  The agents also seized an iPad, Mr. Miltier's smartphone, a PNY thumbdrive, and various other media. Id. at 49, 98

Reuben Jones, a FBI contractor, conducted forensic examinations of the electronic devices and media seized pursuant to the warrant.  R. Jones Test., Tr. of July 12, 2016, J.A. at 61.  The desktop computer, two laptops other than the Acer laptop, Mr. Miltier's smartphone, and various media contained nothing of evidentiary value.  Id. at 89, 95-98.

The Acer laptop contained one photograph and eleven video files Reuben Jones considered to be child pornography and software for the Ares file-sharing program.  Id. at 94.  Ares is a peer-to-peer file sharing program.  Id. at 91.  The eleven files were located in the My Shared folder within the recycle bin of the Acer

laptop.  Id. at 91; Govt Exhs 37-46, J.A. at 624-33.  The Ares software designated the My Shared folder as the default folder for the Ares program.  R. Jones Test., Tr. of July 12, 2016, J.A. at 91; R. Jones Test., Tr. of July 13, 2016, J.A. at 114.

When the Ares program is installed, "it does things automatically" without user input.  R. Jones Test., Tr. of July 12, 2016, J.A. at 91.  One thing Ares does automatically is to download files previously selected whenever the computer is on and connected to the internet.  R. Jones Test., Tr. of July 13, 2016, J.A. at 113. The forensic software identified the eleven files as having been created, accessed, and written on either March 28 or April 28, 2014.  Govt Exhs 37-46, J.A. at 624-33.  Mr. Miltier's work records showed him as being on leave those two days. Def. Exh. 1, J.A. at 397, 399.  But the Government offered no evidence on when the files had been requested through Ares, and Reuben Jones testified that Ares could later download files automatically if not completed during the initial sessions.  R. Jones Test., Tr. of July 13, 2016, J.A. at 115, 148.

Forensic software reports identified file names associated with child pornography that had been downloaded or shared on the Ares network.  Govt Exhs 24, 25, 26, J.A. at 412-54.  Other reports identified internet browser searches, Govt Exh. 27, J.A. at 455-558, visits to internet sites (urls) associated with pornography, Govt Exh. 28, J.A. at 559-61, and visits to internet chat rooms associated with pornography, Govt Exh. 29, J.A. at 562-85, conducted at various specific times

with the Acer laptop.  Reuben Jones confirmed that browser searches, visits to sites, and visits to chat rooms were only possible through active use of the Acer laptop, i.e., by a user using the keyboard to input the information. E.g., R. Jones Test, Tr. of July 13, 2016, J.A. at 201-28.  Mr. Jones had also identified 489 archived file names (but not files themselves) that had names he associated with child pornography.  R. Jones Test, Tr. of July 12, 2016, J.A. at 94-95; R. Jones Test, Tr. of July 13, 2016, J.A. at 187-89.  All of those file names had been created, written, and last accessed on February 13, 2014, between approximately 10:16 and 10:27 A.M.  Id. at 189.  A PNY thumb drive seized pursuant to the search warrant contained files names associated with child pornography written to the thumb drive the morning of March 6, 2014. Govt Exh. 34, J.A. at 590-623.

The Government presented no evidence concerning the presence of malware on the Acer laptop or the ability or otherwise of a remote user to control the computer to download files for subsequent sharing through the Ares network. Reuben Jones testified that he had no information on where the Acer laptop had been at any time that files were downloaded or shared or search queries made. R. Jones Test., Tr. of July 13, 2016, J.A. at 229.  Jones offered no testimony as to who had used the laptop when any files were requested through Ares.

The system clock for the Acer laptop was accurate to one minute, meaning the digital time stamps on files and in logs were accurate but for being one minute

off of Eastern time. R. Jones Test., Tr. of July 12, 2016, J.A. at 101. The file "created" date for a file indicates the date and time the file is first written to the computer drive or media. R. Jones Test., Tr. of July 13, 2016, J.A. at 121. If a file were not completely written to the drive or media at one time, but was interrupted because of a powering off, then the date and time the file was completely written would be recorded as the "last written" date. Id. at 121-22. The "access" date is the last date the computer's operating system interacted with the file, E.g., running a virus program against the file or opening the file. Id. at 122.

The Government's evidence established that the file upon which Count One was predicated, the gfgvgvffcfccrdyu (6).mpg file, had not been downloaded through Ares or off the internet. Govt Exh. 24, J.A. at 412-24. Moreover, the Government's evidence established that the file upon which Count Five was predicated, the $ru5evvp.mpg file, was neither downloaded through Ares or off the internet, id., nor present among the Ares shared files, Govt Exh. 26, J.A. at 427-54.

At the close of the Government's case, Mr. Miltier moved for judgment of acquittal as to Counts 1 and 5 on the grounds there was no evidence the files at issue for those counts had been received through the internet. Tr. of July 13, 2016, J.A. at 262. The trial court denied the motion. Tr. of July 14, 2016, J.A. at 277. Mr. Miltier then presented evidence from his co-worker Jenkins Jones, wife Lori Miltier, and Special Agent Desy before resting.

Jenkins Jones, a co-worker of Mr. Miltier, testified that Mr. Miltier worked in the Controlled Industrial Area (CIA) of Norfolk Naval Shipyard, a high security area in which computers were prohibited. Jenkins Jones Test, Tr. of July 14, 2016, J.A. at 282. Mr. Miltier could bring his cell phone into the CIA if it did not have a camera. Id. at 287. Mr. Jones and Mr. Miltier worked together on first shift during the Fall of 2013 through Spring of 2014, in the same shop and in each others' sight. Id. at 280-81, 284. First shift hours during that period were from 0720 to 1600 Monday through Friday. Id. at 281. Workers such as Mr. Jones and Mr. Miltier had to park in a parking lot outside the CIA and walk to the gate that allowed access to the fenced CIA, a fifteen- to twenty-minute walk. Id. at 282. During the workday, Mr. Miltier received a forty-minute break for lunch, from 1120 to 1200. Id. at 283. He always brought his lunch with him and ate in the CIA. Id. He also received two 15-minute breaks, one in the morning and one in the afternoon. Id. at 286-87. Mr. Jones never saw Mr. Miltier ever sign in late or sign out early. Id. at 289.

The PNY thumbdrive contained file names that were all last written on the morning of March 6, 2014. Govt Exh. 34, J.A. at 590-623. For that entire morning, Mr. Miltier was in the company of his wife, daughter, and stepdaughter. L. Miltier Test., Tr. of July 14, 2016, J.A. 297-300; Def. Exhs 2 and 3, J.A. at 400, 401.

Special Agent Desy identified Mr. Miltier's work records. Def. Exh. 1, J.A. at 388-99.[1] The work records established that Mr. Miltier was at work during illicit computer activity the Government highlighted in its evidence. Compare,E.g., Def. Exh. 1, J.A. at 393-94 (Feb. 2, 2014) with Govt Exh. 28, J.A. at 560 (2/3/2014 14:59); Def. Exh. 1, J.A. at 394 (Feb. 11, 2014) with Govt Exh. 24, J.A. at 420 (2/11/2014 14:53, :55, :56, :57), Govt Exh. 27, J.A. at 529 (2/11/2014 14:45), 533 (2/11/2014 14:17, :35); Def. Exh. 1, J.A. 394 (Feb. 13, 2014) with Govt Exh. 27, J.A. at 526 (2/13/2014 12:54), Govt Exh. 28, J.A. at 560 (2/13/2014 10:57), Govt Exh. 29, J.A. at 576 (2/13/2014 12:59, 10:57); Def. Exh. 1, J.A. at 396 with Govt Exh. 24, J.A. at 414 (3/12/2014 14:24 through 15:38), Govt Exh. 27, J.A. at 496-97 (3/12/2014 11:12), Govt Exh. 28, J.A. at 559 (3/12/2014 11:13 through 11:14), Govt Exh. 29, J.A. at 567-68 (3/12/2014 11:12, :14); Def. Exh. 1, J.A. at 397 (Mar. 25, 2014) with Govt Exh. 27, J.A. at 495 (3/25/2014 15:04), Govt Exh. 29, J.A. at 565 (3/25/2014 15:05). Furthermore, the work records establish that during days Mr. Miltier was on leave there was no illicit computer activity. Compare,E.g., Def. Exh. 1, J.A. at 393, 398, 399 (Jan. 22, 2014, Apr. 7, 2014, Apr. 8, 2014, Apr. 18, 2014, May 2, 2014) with Govt Exhs 27, 28, 29, J.A. at 455-587.

---

[1] The codes used in the work records are contained in the parties' Trial Stipulation, Govt Exh. 49, J.A. at 636.

After the conclusion of the evidence, the trial court conducted a charge conference on jury instructions. The trial court overruled Mr. Miltier's objections to the court's instructions on the elements of the offense for Counts One through Seven as they pertained to the interstate nexus necessary to convict under 18 U.S.C. § 2252A(a)(2). Charge Conf., Tr. of July 14, 2016, J.A. at 338-43, 350, 386. The trial court also overruled Mr. Miltier's objection to the charge as an unlawful variance from the indictment. Id. at 338. The trial court's instruction on this subject is numbered as number 28. Jury Inst., J.A. at 675-76. The jury returned a verdict of guilty on all counts of the Superseding Indictment. Verdict Form, J.A. at 697.

On July 28, 2016, Mr. Miltier moved for judgment of acquittal on all counts based on insufficient evidence, in the alternative for judgment of acquittal on Counts One and Five based on insufficient evidence, and in the alternative for a new trial based on erroneous jury instructions. Docket Report, J.A. at 8. The trial court denied the motions by opinion and order dated September 6, 2016. Op. & Order, J.A. at 698. On October 25, 2016, the trial court sentenced Mr. Miltier to imprisonment for a term of 120 months on each of Counts One through Eight, each term to run concurrently to the others, and supervised release for life on each count. Judgment, J.A. at 715-20.

Mr. Miltier noticed his appeal from the judgment on November 7, 2016. Not. of Appeal, J.A. at 729.

Additional facts are included *infra* as necessary.

## SUMMARY OF THE ARGUMENT

While circumstantial evidence may be sufficient to sustain a conviction, intuition or speculation is not. The Government's case against Mr. Miltier was wholly circumstantial, but, crucially, it was significantly incomplete. While some interstitial cracks might be overlooked, the yawning chasms cannot be. The Government's theory of the case was that Mr. Miltier downloaded files depicting child pornography from the internet using a peer-to-peer software program to a laptop computer as part of an extensive pattern of illicit conduct over years that included pornographic web search queries, visits to internet chat rooms, and visits to internet pornography sites. But the Government had no evidence that Mr. Miltier was the user of the laptop at the time of the illicit conduct, no evidence whether the laptop was even in Mr. Miltier's possession at the time of the illicit conduct, and no evidence that the laptop was free of malware that would have permitted a remote user to control the laptop. In addition, the evidence was undisputed that during many times when the laptop was used for illicit conduct, Mr. Miltier was incapable of having used it due to his work schedule and the physical conditions where he worked, a controlled government facility in which

computers were banned. As a result, the Government's case offered relied on speculation and intuition to bridge the sundry and substantial evidentiary gaps; further, the Government's evidence was incapable of reconciling the discrepancies between the Government's theory and the impossibility of Mr. Miltier's use of the Acer laptop when at work, without which the evidence did not conform with that theory. Substantial evidence, as opposed to speculation or intuition, did not permit a reasonable jury to conclude guilt beyond a reasonable doubt, and the convictions cannot stand.

Furthermore, the trial court labored under a misapprehension of the evidence necessary to support a conviction under 18 U.S.C. § 2252A(a)(2)'s interstate nexus requirement and the charging document. Confusing the interstate nexus requirements of other, uncharged statutes, with that of Section 2252A(a)(2), and ignoring the express language of the Superseding Indictment, the trial court, over Mr. Miltier's objection, instructed the jury on offenses that were not charged by permitting it to convict based on the origin of manufacture of the laptop, rather than the interstate movement of the files that formed the basis of each of the Section 2252A(a)(2) counts, Counts One through Seven. This error, coupled with the undisputed evidence that the files at issue in Counts One and Five were not downloaded from the internet, as alleged in the Superseding Indictment, led the trial court to erroneously deny Mr. Miltier's Rule 29 motion at the close of the

Government's case. The same error, carried over into the trial court's jury instructions, resulted in a fatal variance to the prejudice of Mr. Miltier.

These errors require that Mr. Miltier's convictions and sentence be vacated. In the alternative, his convictions should be reversed and the case remanded for a new trial.

## ARGUMENT

## I. THERE WAS INSUFFICIENT EVIDENCE FOR A RATIONAL JURY TO FIND MR. MILTIER GUILTY BEYOND A REASONABLE DOUBT ON THE COUNTS IN THE SUPERSEDING INDICTMENT

### A. Standard of Review

"A jury verdict 'must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it.'" United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc) (quoting Glasser v. United States, 315 U.S. 60, 80 (1942)). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Young, 609 F.3d 348, 355 (4th Cir. 2010). "A reviewing court . . . shall reverse a verdict if the record demonstrates a lack of evidence from which a jury could find guilt beyond a reasonable doubt." Burgos, 94 F.3d at 862 (citations omitted). The Court views the evidence in toto and in context. Id. at 863.

**B.     The Evidence Was Insufficient For A Reasonable Jury To Find
Mr. Miltier Knowingly Received Or Possessed Child Pornography**

The trial court instructed the jury that it must find beyond a reasonable doubt that Mr. Miltier knowingly received and possessed child pornography.  As defined by the trial court, that meant that the jury was required to find that he "realized . . . what was happening around him," Jury Inst. no. 23, J.A. at 670, and "had knowledge of the  . . . contents of the material . . . . [meaning he] must have knowledge or an awareness that the material contained a visual depiction of a minor engaging in sexually explicit conduct," Jury Inst. no. 30, J.A. at 678-79. The evidence, even taken in a light most favorable to the Government, was insufficient for this conclusion by a reasonable jury beyond a reasonable doubt.

The Government presented evidence that the ten files forming the basis for Counts One through Eight were resident on an Acer laptop computer seized from Mr. Miltier's residence on May 7, 2014.   Beyond that, the gaps in the Government's evidence are staggering.

The Government presented no evidence that Mr. Miltier ever accessed the My Shared folder on the Acer laptop.  The Government offered no evidence that there were any files in the My Shared folder connected to Mr. Miltier: no emails, photos, documents.   The Government presented no evidence that Mr. Miltier downloaded the Ares program, created the My Shared folder, or moved the My Shared folder to the Recycle Bin, or even when those events occurred.  While the

Government introduced evidence of emails, from 2011, and photos, from 2013 or earlier, connected to Mr. Miltier from other folders, none of them were in the My Shared folder.

The Government presented no evidence that the Acer laptop was free from malware that would have permitted a remote user to control the computer. What the Government's evidence did show was that files downloaded to the Acer laptop could be shared on the Ares network. In other words, a remote user could use the Acer laptop as a storage facility and access the stored files at will through Ares.

The Government presented no evidence that the Acer laptop was connected to the internet at Mr. Miltier's residence when files were searched for or downloaded. Similarly, the Government presented no evidence that Mr. Miltier was using the Acer laptop when files were searched for or downloaded, or that he even knew the files were on the laptop.

Furthermore, the uncontroverted evidence showed that the Acer laptop was used to download file names associated with child pornography, conduct internet searches associated with child pornography, visit pornographic websites, and visit pornographic chat rooms when Mr. Miltier was at work in the CIA of Norfolk Naval Shipyard, an area in which computers were prohibited. J. Jones Test, Tr. of July 14, 2016, J.A. at 282. The testimony of Jenkins Jones was unchallenged and established that: no computers other than government desktops were available

inside the CIA; Mr. Miltier did not leave work at lunch; and, the lunch period was too short, at forty minutes, to permit him to go anywhere or even return to his car for anything more than a de minimus period of time as the parking lot was a fifteen to twenty minute walk from the work site. Id. at 280-84, 286-87. The uncontroverted evidence also showed that Mr. Miltier's cell phone, the only electronic device he could have with him at work, contained no child pornography. R. Jones Test, Tr. of July 12, 2016, J.A. at 98. The Government presented no evidence that Mr. Miltier left early from work; in fact, the only evidence at trial, again from Mr. Jones, was that Mr. Miltier did not leave early or arrive late. J. Jones Test, Tr. of July 14, 2016, J.A. at 289.

Evidence that the Government did present established that the Acer laptop was used for illicit activity during times Mr. Miltier could not have been using it because of his work schedule and the conditions of that work. The uncontroverted evidence showed that: when 489 file names associated with child pornography were downloaded to the Incoming folder of the Acer laptop, Mr. Miltier was at work in the CIA; when pornographic web searches were conducted and chat rooms visited, Mr. Miltier was at work in the CIA; when pornography sites were visited, Mr. Miltier was at work in the CIA. Compare,E.g., Def. Exh. 1, J.A. at 393-94 (Feb. 2, 2014) with Govt Exh. 28, J.A. at 560 (2/3/2014 14:59); Def. Exh. 1, J.A. at 394 (Feb. 11, 2014) with Govt Exh. 24, J.A. at 420 (2/11/2014 14:53, :55, :56,

:57), Govt Exh. 27, J.A. at 529 (2/11/2014 14:45), 533 (2/11/2014 14:17, :35); Def. Exh. 1, J.A. 394 (Feb. 13, 2014) <u>with</u> Govt Exh. 27, J.A. at 526 (2/13/2014 12:54), Govt Exh. 28, J.A. at 560 (2/13/2014 10:57), Govt Exh. 29, J.A. at 576 (2/13/2014 12:59, 10:57); Def. Exh. 1, J.A. at 396 <u>with</u> Govt Exh. 24, J.A. at 414 (3/12/2014 14:24 through 15:38), Govt Exh. 27, J.A. at 496-97 (3/12/2014 11:12), Govt Exh. 28, J.A. at 559 (3/12/2014 11:13 through 11:14), Govt Exh. 29, J.A. at 567-68 (3/12/2014 11:12, :14); Def. Exh. 1, J.A. at 397 (Mar. 25, 2014) with Govt Exh. 27, J.A. at 495 (3/25/2014 15:04), Govt Exh. 29, J.A. at 565 (3/25/2014 15:05). The uncontroverted evidence showed that when file names associated with child pornography were written to the PNY thumb drive, Mr. Miltier was with his wife, daughter, and granddaughter preparing for and attending a doctor's appointment. L. Miltier Test., Tr. of July 14, 2016, J.A. 297-300; Def. Exhs 2 and 3, J.A. at 400, 401.

While Mr. Miltier was on leave from his work on March 28 and April 28, 2014, when the files cited in the Superseding Indictment were created, he was also on leave on January 22, April 7, April 8, April 18, and May 2, 2014, the same period, when there was no illicit computer activity whatsoever.  <u>Compare</u>,<u>E.g.</u>, Def. Exh. 1, J.A. at 393, 398, 399 (Jan. 22, 2014, Apr. 7, 2014, Apr. 8, 2014, Apr. 18, 2014, May 2, 2014) <u>with</u> Govt Exhs 27, 28, 29, J.A. at 455-587.  Coupled with the evidence of illicit activity for which Mr. Miltier could not have been

responsible because of his work schedule and conditions, this inactivity defeats the ability of a reasonable jury to find the evidence adequate and sufficient to support a finding of guilt beyond a reasonable doubt.

In short, the Government's case was based entirely on circumstantial evidence that the Acer laptop contained child pornography in a folder, though not in a folder it could show Mr. Miltier accessed, that it contained emails and photos of Mr. Miltier, though not in any folder containing child pornography, that it contained internet searches associated with roofing, but not during any period associated with child pornography, and that Mr. Miltier had used the laptop, but not on any particular day associated with child pornography. While circumstantial evidence may be sufficient to support a conviction, see Burgos, 94 F.3d at 857-58 (holding that circumstantial evidence alone is sufficient to support a cocaine conspiracy conviction), it must be circumstantial evidence, supporting the elements of the offenses, that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt. That was not the case here.

The Government's circumstantial evidence here does not support the conclusion beyond a reasonable doubt by a reasonable juror that Mr. Miltier knowingly received or possessed child pornography. Instead, the Government sought to rely on speculation and intuition. "[I]ntuition cannot substitute for

admissible evidence when a defendant is on trial." <u>United States v. Thomas</u>, 987 F.2d 697, 702 (11th Cir. 1993) (quoting <u>United States v. Hamblin</u>, 911 F.2d 551, 558 (11th Cir. 1990)). The use of the Acer laptop by someone to access child and other pornography during times Mr. Miltier was at work without any possibility of access to the laptop, coupled with the evidentiary voids outlined above, defeats the substantial evidence standard necessary to uphold the verdict as to all eight counts. The Court should vacate Mr. Miltier's conviction and sentence.

### C. The Evidence Was Insufficient For A Reasonable Jury To Find The Files In Counts One And Five Were Received Using Any Means Or Facility Of Interstate Or Foreign Commerce

In the alternative to the argument in Section I.B, *supra*, the convictions on Counts One and Five were not supported by sufficient evidence. For the files in Counts One and Five, the Government presented no evidence that the files had been downloaded off of the internet. The Superseding Indictment charged Mr. Miltier with receiving the files at issue in Counts One and Five over the internet, and a conviction under 18 U.S.C. § 2252A(a)(2) requires that the child pornography <u>received</u> have been "mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer." <u>Id</u>. By contrast, a conviction under 18 U.S.C. § 2252A(a)(5) requires that the child pornography *possessed* have been "mailed, or using any means or facility of interstate or foreign

commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer, *or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer*." Id. (emphasis added).

As discussed *infra*, in Section II, the trial court miscomprehended the interstate nexus required to prove a Section 2252A(a)(2) offense. This miscomprehension is patent in the trial court's jury instruction no. 28, to which Mr. Miltier objected, that incorrectly instructed the jury on the interstate nexus required under the Superseding Indictment and Section 2252A(a)(2), requiring Mr. Miltier's convictions be reversed and the case remanded. But the trial court's confusion also led it to erroneously deny Mr. Miltier's Rule 29 motion as to Counts One and Five.

For the Section 2252A(a)(2) counts, it is legally irrelevant whether the Acer laptop computer or hard drive were manufactured outside of the Commonwealth of Virginia. Instead, the Government was required to prove beyond a reasonable doubt that the images at issue were shipped or transported in interstate commerce, and under the allegations of the indictment, that those images were received over the internet. The evidence at trial was insufficient to establish this element as to the images at issue for Counts One and Five.

For Count One, the gfgvgvffcfccrdyu (6).mpg file was not downloaded through Ares. Govt Exh. 24, J.A. at 412-24. While it does appear in the list of

Ares shared files, Govt Exh. 26, J.A. at 427, that is not evidence of *receipt* through interstate commerce necessary to support a conviction under Section 2252A(a)(2). For Count Five, the $ru5evvp.mpg file was neither downloaded through Ares, Govt Exh. 24, J.A. at 412-24, nor present among the Ares shared files, Govt Exh. 26, J.A. at 427-54. This evidence is insufficient for a reasonable finder of fact to accept as adequate to support a conclusion of Mr. Miltier's guilt on Counts One and Five beyond a reasonable doubt.

## II. THE DISTRICT COURT'S JURY INSTRUCTION FAILED TO INSTRUCT THE JURY ON THE INTERSTATE NEXUS REQUIRED FOR A CONVICTION UNDER 18 U.S.C. § 2252A(A)(2) AND CONSTITUTED A FATAL VARIANCE

### A. Standard of Review

"[W]e conduct a de novo review of any claim that jury instructions incorrectly stated the law." United States v. Mouzone, 687 F.3d 207, 217 (4th Cir. 2012) (citing United States v. Lighty, 616 F.3d 321, 366 (4th Cir. 2010); United States v. Cherry, 330 F.3d 658, 665 (4th Cir. 2003)). Likewise, "[W]hether an indictment has been constructively amended is a question we review de novo." United States v. Allmendinger, 706 F.3d 330, 339 (4th Cir. 2013) (citing United States v. Whitfield, 695 F.3d 288, 306 (4th Cir. 2012)). A new trial is appropriate when the jury is given an instruction that is erroneous or incomplete. See United States v. Buffalano, 727 F.2d 50 (2d Cir. 1984) (reversing denial of motion for new

trial when the trial court's instructions, though legally correct, failed to define

crucial term for the jury).

**B.     18 U.S.C. § 2252A(a)(2) Requires That The Visual Depiction Itself**
**        Have Moved In Interstate Commerce**

Jury instruction number 28 given by the Court erroneously included a

jurisdictional basis for a conviction under 18 U.S.C. § 2252A(a)(2) not present in

the statute and contradictory to the allegations in the Superseding Indictment.

SECOND ELEMENT - EFFECT ON INTERSTATE COMMERCE

THE SECOND ELEMENT WHICH THE GOVERNMENT MUST
PROVE BEYOND A REASONABLE DOUBT IS THAT THE
VISUAL DEPICTION WAS RECEIVED USING ANY MEANS OR
FACILITY OF INTERSTATE OR FOREIGN COMMERCE; OR
HAD BEEN SHIPPED OR TRANSPORTED IN OR AFFECTING
INTERSTATE OR FOREIGN COMMERCE, *OR WHICH*
*CONTAINED MATERIALS WHICH HAD BEEN SO SHIPPED*
*OR TRANSPORTED*, BY ANY MEANS INCLUDING BY
COMPUTER.

THE TERM "INTERSTATE COMMERCE" MEANS THE
MOVEMENT OF PROPERTY FROM ONE STATE TO ANOTHER
STATE. THE TERM "FOREIGN COMMERCE" MEANS THE
MOVEMENT OF PROPERTY FROM ONE STATE TO ANOTHER
COUNTRY. THE TERM "STATE" INCLUDES A STATE OF THE
UNITED STATES, THE DISTRICT OF COLUMBIA, AND ANY
COMMONWEALTH, TERRITORY, OR POSSESSION OF THE
UNITED STATES.

*THE LOCAL OR INTRASTATE PRODUCTION OF VISUAL*
*DEPICTIONS OF A MINOR ENGAGED IN SEXUALLY*
*EXPLICIT CONDUCT WITH A COMPUTER THAT TRAVELED*
*IN INTERSTATE OR FOREIGN COMMERCE IS PART OF AN*
*ECONOMIC CLASS OF ACTIVITIES THAT SUBSTANTIALLY*
*AFFECT INTERSTATE OR FOREIGN COMMERCE.*

FURTHERMORE, BECAUSE OF THE INTERSTATE NATURE OF THE INTERNET, IF YOU FIND BEYOND A REASONABLE DOUBT THAT THE DEFENDANT USED THE INTERNET IN RECEIVING THE PRODUCED VISUAL DEPICTION OF A MINOR ENGAGED IN SEXUALLY EXPLICIT CONDUCT, THEN THAT VISUAL DEPICTION TRAVELED IN INTERSTATE COMMERCE. IT DOES NOT MATTER WHETHER THE COMPUTER THAT VISUAL DEPICTION WAS TRANSPORTED TO WAS IN VIRGINIA, AND IT DOES NOT MATTER WHETHER THE VISUAL DEPICTION THE DEFENDANT POSSESSED WAS TRANSMITTED FROM WITHIN VIRGINIA. IF THE INTERNET WAS USED IN MOVING THE VISUAL DEPICTION, THEN IT TRAVELED IN INTERSTATE COMMERCE.

Jury Inst. no. 28, J.A. at 675 (emphasis added). The emphasized language has no place in the jurisdictional structure of Section 2252A(a)(2): that language is borrowed from a different statute, 18 U.S.C. § 2252(a)(4)(B), which Congress did not employ when it enacted Section 2252A(a)(2).[2]

Instead, Congress enacted Section 2252A(a)(2) with an express interstate nexus requirement. That requirement is restricted to child pornography or material containing child pornography "that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate commerce by any means, including by computer." As a result, the interstate nexus

---

[2]    18 U.S.C. § 2252(a)(4)(B) criminalizes the knowing possession or accessing with intent to view "books, magazines, periodicals, films, video tapes, or other matter which contain any depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce, or *which was produced using materials which have been mailed or so shipped or transported*, by any means including by computer . . . ." Id. (emphasis added).

required for conviction under this section is not coextensive with the full scope of the power of Congress under the commerce power of Article I, section 8, clause 3 of the Constitution, as it does not extend to the purely intrastate receipt of child pornography.  See United States v. Lopez, 514 U.S. 549, 556-58 (1995) (discussing the scope of Congressional power to regulate interstate commerce under the commerce power); see United States v. Rodia, 194 F.3d 465, 475 (3d Cir. 1995) (analyzing "the statutory subsection [at 18 U.S.C. § 2252(a)(4)(B)] at issue in this case [that] regulates purely intrastate possession of child pornography").

This Court has not before addressed the interstate nexus necessary to support a conviction under Section 2252A(a)(2).  The jurisdictional requirement of Section 2252A(a)(2) does not extend to any child pornography that substantially affects interstate commerce, the third prong enunciated in Lopez.  Lopez, 514 U.S. at 558. Rather, the child pornography must have been: a) mailed; or b) using any means or facility of interstate or foreign commerce, shipped or transported in or affecting interstate commerce, including by computer.  This jurisdictional language incorporates the first prong of Lopez, "the channels of interstate commerce," and the second, "the instrumentalities of interstate commerce, or persons or things in interstate commerce," but not the third.  See Id.  The Government expressly recognized this jurisdictional limitation, if a bit awkwardly, in the Superseding

Indictment wherein it charged, for each Section 2252A(a)(2) count, that the image was "child pornography that has been mailed, shipped, and transported in, and affecting interstate and foreign commerce, by any means, including by computer, and that has been shipped and transported using any means and facility of interstate and foreign commerce."  Super. Indictment, J.A. at 14.  The indictment further specified for each Count One through Seven that the file had been received over the internet: "that is, MILTIER received and caused to be received a file . . . which contained child pornography, and was received and transported over the internet to MILTIER's computer located in the Eastern District of Virginia."  Id.  The Government wrongly told the trial court at the charge conference "The instruction itself tracks the indictment perfectly, which tracks the statute perfectly," Charge Conf., Tr. of July 14, 2016, J.A. at 340, when in fact it did neither: the instruction given by the trial court expanded the language in the indictment, a fatal variance, and exceeded the language in the statute, another fatal variance.

As a result of this instruction, the jury could have erroneously concluded that the source of origin of the Acer laptop or its hard drive was sufficient to satisfy the interstate commerce element of Counts One through Seven.  In other words, the jury could have failed to find that the images at issue in these counts themselves were shipped or transported in interstate commerce, including by computer.  This error affected an element of the offense for each of Counts One through Seven and

prejudiced Mr. Miltier.  "A constructive amendment to an indictment occurs when either the government (usually during its presentation of evidence and/or its argument), the court (usually through its instructions to the jury), or both, broadens the possible bases for conviction beyond those presented by the grand jury." United States v. Floresca, 38 F.3d 706, 710 (4th Cir. 1994) (en banc).  In Floresca, the trial court failed to instruct the jury on the elements of the offense for the statute charged in the indictment, 18 U.S.C. § 1512(b)(1), but instead instructed the jury on the elements for an offense under 18 U.S.C. § 1512(b)(3). "The court's instruction on Paragraph 3 was more than just a misstatement of the law applicable to the indicted offense; it stated a distinct, unindicted offense.  It was by no means only a 'slight defect in the charge [that] could be cured by other circumstances.'" Id. (quoting United States v. Polowichak, 783 F.2d 410, 416 (4th Cir. 1986)).  This Court reversed the conviction and remanded.  Id. at 714.

The trial court made the same error here as did the trial court in Floresca. By expanding the interstate nexus beyond that set forth in Section 2252A(a)(2) and the indictment, the trial court instructed the jury on a distinct, unindicted offense.

Instead of the instruction given, the trial court should have adopted Mr. Miltier's proffered instruction, which it rejected over Mr. Miltier's objection.

SECOND ELEMENT–EFFECT ON INTERSTATE
COMMERCE

> THE SECOND ELEMENT WHICH THE GOVERNMENT MUST
> PROVE BEYOND A REASONABLE DOUBT IS THAT THE
> VISUAL DEPICTION WAS MAILED OR ACTUALLY
> TRANSPORTED IN OR AFFECTING INTERSTATE OR
> FOREIGN COMMERCE.
> THE INDICTMENT ALLEGES THAT THE VISUAL DEPICTION
> WAS TRANSPORTED OVER THE INTERNET. TRANSMISSION
> OF PHOTOGRAPHS OR VIDEO BY MEANS OF THE INTERNET
> CONSTITUTES TRANSPORTATION IN OR AFFECTING
> INTERSTATE COMMERCE. HOWEVER, YOU MUST FIND
> BEYOND A REASONABLE DOUBT THAT THE SPECIFIC
> DEPICTION IN QUESTION WAS ACTUALLY TRANSMITTED
> BY MEANS OF THE INTERNET.

Def. Prop. Jury Inst. no. 28, J.A. at 21. This instruction conforms to the

jurisdictional requirements of the statute and the allegations in the indictment.

There was no evidence at trial that the images were present on the Acer

laptop when the laptop crossed a state or national boundary. The Government was

required to prove that the images themselves moved in commerce, through the

internet, in accordance with the charged statute and the charging document. This

error adversely affected a substantial right of Mr. Miltier, making it unjust to allow

the verdict to stand. United States v. Rasco, 123 F.3d 222, 228 (5th Cir. 1997);

Floresca, 38 F.3d at 712-13. The error goes squarely "to the basis on which 'the

jury actually rested its verdict.'" Sullivan v. Louisiana, 508 U.S. 275, 279 (1993)

(quoting Yates v. Evatt, 500 U.S. 391, 404 (1991)). In the alternative to vacating

his convictions entirely, the Court should reverse the convictions and grant Mr. Miltier a new trial.

## CONCLUSION

For the reasons set forth above, the Court should vacate the convictions and sentence of Mr. Miltier and direct the trial court to enter judgment of acquittal, or, in the alternative, remand for a new trial.

## STATEMENT WITH RESPECT TO ORAL ARGUMENT

Appellant requests oral argument.

Respectfully submitted this 31st day of January, 2017.

/s/ James R. Theuer
James R. Theuer (VSB #68712)
Attorney for Appellant Ronald Miltier
JAMES R. THEUER, PLLC
555 E. Main St., Suite 1212
Norfolk, VA 23510
Tel: (757) 446-8047
Fax: (757) 446-8048
jim@theuerlaw.com

# CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*6,544*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt  Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: January 31, 2017                     /s/ James R. Theuer
                                            *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 31st day of January, 2017, I caused this Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

>Joseph Kosky
>OFFICE OF THE U.S. ATTORNEY
>101 West Main Street, Suite 8000
>Norfolk, Virginia 23510
>(757) 441-6331
>
>*Counsel for Appellee*

I further certify that on this 31st day of January, 2017, I caused the required copies of the Brief of Appellant and Joint Appendix to be hand filed with the Clerk of the Court, and a copy of the Sealed Volume of the Joint Appendix to be served, via UPS Ground Transportation, upon counsel for the Appellee, at the address above.

/s/ James R. Theuer
*Counsel for Appellant*